*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0169P (6th Cir.)
File Name: 00a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DONALD HARRIS,
    *Petitioner-Appellant,*

    *v.*             No. 98-2308

CLARICE STOVALL,
    *Respondent-Appellee.*



Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-76301—Arthur J. Tarnow, District Judge.

Argued: May 3, 2000

Decided and Filed: May 18, 2000

Before: SUHRHEINRICH and COLE, Circuit Judges;
QUIST, District Judge.[*]

---

## COUNSEL

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for
Appellant. Vincent J. Leone, OFFICE OF THE ATTORNEY
GENERAL, HABEAS CORPUS DIVISION, Lansing,

---

[*] The Honorable Gordon J. Quist, United States District Judge for the
Western District of Michigan, sitting by designation.

1

Michigan, for Appellee.  **ON BRIEF:**  James Sterling Lawrence, Detroit, Michigan, for Appellant.  Vincent J. Leone, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

————————————

**OPINION**

————————————

GORDON J. QUIST, District Judge.  This appeal of the denial of a habeas corpus application requires us to apply the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  Donald Harris, a Michigan state prisoner serving a mandatory life term for first-degree felony-murder, appeals from an order of the district court denying his application for habeas relief filed pursuant to 28 U.S.C. § 2254.  The victim was John Anthony, who was killed at gunpoint while working in his store in Detroit.  Harris did not commit the crime alone.  Two others, Stanley West and Frederick Wilkes, were tried together and convicted of the murder. Harris was tried later.  In this appeal, Harris contends that he was denied due process of law when, as an indigent defendant, he was denied free transcripts of the earlier trial of West and Wilkes.  Harris claims that the transcripts were necessary for effective impeachment of the state's witnesses, which would support his theory of innocence.  The district court held that petitioner had adequate alternatives to the transcripts because copies of the preliminary examination transcripts from the prior trial had been filed.  The district court also found that any error was harmless. The underlying habeas action was filed in early 1997, and the standards under the AEDPA apply. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 2067 (1997); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).  Although the district court incorrectly applied the standards under the AEDPA, we affirm the result it reached.

## I. STANDARD OF REVIEW

This court applies *de novo* review to the decision of the district court in a habeas corpus proceeding. *See, e.g.*, *Harpster*, 128 F.3d at 326; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). Federal habeas review of the state court's decision is governed by the standards established by the AEDPA. *See Harpster*, 128 F.3d at 326. Under the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

On April 18, 2000, the Supreme Court issued a decision in *Williams v. Taylor*, 120 S. Ct. 1495 (2000), setting forth the standard of review that a federal habeas court must apply under § 2254(d). The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a questio n of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 1523. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 1522.

In this case, the district court referred to our holding in *Harpster*, which simply noted the differing interpretations of § 2254(d) developing in our sister circuits, but found that the

standard under § 2254(d) had not been met. *See Harpster*, 128 F.3d at 326-27. Subsequently, in *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.), *cert. denied*, 119 S. Ct. 2340 (1999), we found it appropriate to rely on the Fifth Circuit's "debatable among reasonable jurists" standard in *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), combined with the First Circuit's standard of "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," set forth in *O'Brien v. Dubois*, 145 F.3d 16 (1st Cir. 1998). *See Nevers*, 169 F.3d at 361-62. Later, we reaffirmed this approach in *Maurino v. Johnson*, No. 98-1332, ___ F.3d ___, 2000 WL 432804, at *5 (6th Cir. Apr. 24, 2000). However, the Supreme Court in *Williams* found that the Fourth Circuit's test—that a state court's application of federal law was "unreasonable" only if the court had applied federal law in a manner that reasonable jurists would all agree was unreasonable—was erroneously subjective, as the inquiry should be objective. The Court expressly disavowed the Fifth Circuit's "reasonable jurist" standard set forth in *Drinkard*. In light of the Supreme Court's decision in *Williams*, we find that *Nevers* and *Maurino* no longer correctly state the law on the issue of the appropriate standard under 28 U.S.C. § 2254(d). We must therefore rely solely on the Supreme Court's decision in *Williams* for the appropriate standard under § 2254(d).

## II. ANALYSIS

### A. *Lack of a state court decision articulating its reasoning*

In this case, there appears to be no state court decision to evaluate under § 2254(d). The issue concerning provision of a free transcript was raised on appeal to the Michigan Court of Appeals, which summarily issued an Order Granting [the Prosecutor's] Motion to Affirm on February 2, 1978. The Michigan Supreme Court denied leave to appeal on February 7, 1979. Thus, the issue is how to apply § 2254(d) when there is no state court decision articulating its reasons.

*codefendants* for purposes of impeaching witnesses.[2] Such a rule would impose a new obligation on the state government under factual circumstances beyond that recognized by the Supreme Court. Consequently, we conclude that Supreme Court precedent existing at the time of petitioner's trial did not dictate or compel a rule that a defendant is entitled to a free copy of a transcript of his codefendants' previous trial for impeachment of witnesses. Although a petitioner's case need not be factually identical to the facts in the case before the Supreme Court, a better analog than as presented in this case is necessary. Thus, the result of the decision of the Michigan Court of Appeals to affirm petitioner's conviction was not an unreasonable application of clearly established federal law as determined by the Supreme Court because the Supreme Court precedent on the rule sought by petitioner was not clearly established.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2]We note that even if the Supreme Court had stated the rule sought by petitioner in a decision issued after petitioner's trial, petitioner could not rely upon it. The rule must have been "as of the time of the relevant state court decision." *Williams*, 120 S. Ct. at 1523.

needed); *Long v. District Court of Iowa*, 385 U.S. 192, 87 S. Ct. 362 (1966)(per curiam)(transcript of habeas proceedings needed for appeal); *Draper v. Washington*, 372 U.S. 487, 83 S. Ct. 774 (1963) (transcript needed for appeal); *Eskridge v. Washington State Bd. of Prison Terms and Paroles*, 357 U.S. 214, 78 S. Ct. 1061 (1958)(per curiam)(trial transcript needed for an appeal); *Griffin*, 351 U.S. 12, 76 S. Ct. 585 (trial transcript needed for an appeal).

Moreover, the statement in *Britt* that the state must provide an indigent defendant with the basic tools for an effective defense was unquestionably broad. The *Britt* Court itself recognized that "the outer limits of that principle are not clear." *Britt*, 404 U.S. at 227, 92 S. Ct. at 433. Obviously, the basic tools needed for an effective defense are not contained in any list, and the Supreme Court has only begun to delineate what the basic tools might be. For example, in *Ake v. Oklahoma*, 470 US. 68, 105 S. Ct. 1087 (1985), the Court considered "whether, and under what conditions, the participation of a psychiatrist is important enough to preparation of a defense to require the State to provide an indigent defendant with access to competent psychiatric assistance in preparing the defense." *Id.* at 77, 105 S. Ct. at 1093. The Court specifically mentioned that the language in *Britt* regarding providing an indigent defendant the "basic tools of an adequate defense or appeal," was only the beginning of the inquiry. *Id.* Then, in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S. Ct. 2633 (1985), the Court considered whether and when an indigent defendant is entitled to nonpsychiatric expert assistance. *See id.* at 323 n.1, 105 S. Ct. at 2637 n.1. Thus, the Supreme Court has not completely answered the question of what basic tools are necessary for an adequate defense.

Petitioner has not cited any Supreme Court authority extending the principles of *Britt* to an indigent defendant's request for free copies of transcripts from a prior trial ***of his***

---

Other circuit courts have concluded that where the state court has not articulated its reasoning, federal courts are obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999) ("we must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented"); *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999); *Delgado v. Lewis*, 181 F.3d 1087, 1091 n.3 (9th Cir.1999), *vacated on other grounds*, 120 S. Ct. 1002 (2000); *accord Gordon v. Kelly*, No. 98-1905, 2000 WL 145144, at *12 (6th Cir. Feb. 1, 2000). That independent review, however, is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.[1] In this appeal, we find that the result reached by the Michigan Court of Appeals in its summary denial of petitioner's claim was not inimical to the AEDPA.

## B. *"Clearly established federal law as determined by the Supreme Court of the United States"*

The district court, applying *Britt v. North Carolina*, 404 U.S. 226, 92 S. Ct. 431 (1971), found that petitioner would be entitled to a transcript from another defendant's trial if the

---

[1] It would be error for a federal court to "remand" an action to the state appellate courts for the issuance of fuller findings to facilitate review under AEDPA or for a federal court to order any state court to issue fuller findings. Where a state court decides a constitutional issue by form order or without extended discussion, a habeas court should then focus on the *result* of the state court's decision, applying the standard articulated above.

transcript were "necessary for discovery or impeachment purposes and there were no available alternatives to fulfill those functions." The district court also relied on other lower court decisions, including our decision in *Riggins v. Rees*, 74 F.3d 732 (6th Cir. 1996). We find that the district court erroneously applied the AEDPA to the decision of the Michigan Court of Appeals through a misinterpretation of the meaning of "clearly established federal law as determined by the Supreme Court of the United States" under § 2254(d) in two critical ways.

First, the AEDPA expressly limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). The *Williams* Court found that a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *See Williams*, 120 S. Ct. at 1523. We have stated that this provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998). We reemphasize that point here. It was error for the district court to rely on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d).

Second, the district court failed to appropriately apply "clearly established law" as determined by the Supreme Court when it applied the rule in *Britt* to petitioner's case. The *Williams* Court stated that "[w]hatever would qualify as an 'old rule' under *Teague* will constitute 'clearly established Federal law, as determined by [this] Court.'" *Williams*, 120 S. Ct. at 1499 (citation omitted). Under *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 1070 (1989). "To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* In determining

whether the relief requested would constitute a new rule, the question becomes "'whether a state court considering [the petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.'" *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S. Ct. 948, 953 (1994)(*quoting Saffle v. Parks*, 494 U.S. 484, 488, 110 S. Ct. 1257, 1260 (1990)). Thus, applying *Teague* principles, "clearly established federal law as determined by the Supreme Court of the United States" means that the rule sought by petitioner must have been dictated or compelled by *Britt*. We find that it was not.

Petitioner seeks a rule compelling the state to provide an indigent defendant with free copies of trial transcripts of his codefendants' previous trial so that he can impeach the prosecution's witnesses. In *Britt*, the Supreme Court considered whether an indigent petitioner was entitled to a free transcript of his own previous trial, which had ended in a mistrial because the jury was deadlocked. The Court relied on *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585 (1956), which held that as a matter of equal protection, the state must "provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt*, 404 U.S. at 227, 92 S. Ct. at 433.

*Britt* concerned a petitioner who requested a transcript of **his own** prior trial which resulted in a deadlocked jury. In contrast, petitioner seeks transcripts from a previous trial of **his codefendants**. The decisions relied upon by the *Britt* Court itself address situations where the petitioner needed a transcript of proceedings in which he was directly involved. *See Williams v. Oklahoma City*, 395 U.S. 458, 89 S. Ct. 1818 (1969)(per curiam)(transcript of trial proceeding needed for the petitioner's appeal); *Gardner v. California*, 393 U.S. 367, 89 S. Ct. 580 (1969) (transcript of state habeas proceedings needed to bring appeal); *Roberts v. LaVallee*, 389 U.S. 40, 88 S. Ct. 194 (1967)(per curiam)(transcript of petitioner's preliminary hearing where state's witnesses testimony was