RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0174P (6th Cir.)
File Name: 04a0174p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

GAMELIEL WARE,
    *Petitioner-Appellant,*

    *v.*

No. 02-2300

PAUL RENICO, Warden,
    *Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-74252—Avern Cohn, Senior District Judge.

Argued: April 27, 2004

Decided and Filed: June 10, 2004

Before: MARTIN and ROGERS, Circuit Judges; BELL,
Chief District Judge.[*]

———————

## COUNSEL

**ARGUED:** Elizabeth L. Jacobs, Detroit, Michigan, for
Appellant. Janet A. Van Cleve, OFFICE OF THE

———————

[*] The Honorable Robert Holmes Bell, Chief United States District
Judge for the Western District of Michigan, sitting by designation.

———————

ATTORNEY GENERAL, Lansing, Michigan, for Appellee.
**ON BRIEF:** Elizabeth L. Jacobs, Detroit, Michigan, for
Appellant. Janet A. Van Cleve, OFFICE OF THE
ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

———————

## OPINION

———————

BOYCE F. MARTIN, JR., Circuit Judge. Gameliel Ware
appeals the district court's denial of his petition for a writ of
habeas corpus, which alleged various errors related to his
state court jury trial and conviction on counts of murder,
assault with intent to murder and possession of a firearm
during the commission of a felony. We AFFIRM.

### I

Ware and his co-defendant, Lamont Card, were tried and
convicted before separate juries in the Circuit Court of Wayne
County, Michigan. The events giving rise to Ware's
prosecution and conviction occurred during the early morning
hours of February 17, 1994, as Ware and Card were leaving
a party in Detroit. They asked two individuals, Carlos Graves
and Marcus Williams, for a ride home. Graves and Williams
agreed to drive them home, and the four men got into
Graves's car; Graves was driving, Williams was in the front
passenger seat, Ware was in the back seat behind Williams,
and Card was in the back seat behind Graves. Williams, the
key prosecution witness at Ware's trial, testified that he saw
Card shoot Graves in the head. Then, according to Williams,
Card turned the gun on him and shot him in the ear, causing
him to slump over to the side. As Williams slumped over, he
was shot a second time – this time in the right shoulder – but
he did not know who fired this second shot. Williams did
testify, however, that after the shots were fired, he saw Ware
reach forward and put the car into park. He also testified that
Ware and Card then proceeded to pull Graves and him out of

the car, dump them in the street, and drive off in Graves's car. While Williams survived this attack, Graves unfortunately died from his injuries. The police located Graves's car later that day, parked on a street near Card's home.

Officer Fred Moore arrested Ware in Ware's home that same day. There is some dispute regarding the circumstances of Officer Moore's entry into Ware's home. Apparently Ware was not at home when Officer Moore arrived, but Ware's brother, Chappell Ware, answered the door. According to Officer Moore, Chappell Ware let him into the home and allowed him to wait there until Ware's arrival. According to Chappell Ware, on the other hand, Officer Moore entered the home without consent and without a warrant, and ordered that its occupants stay in a certain area. Ware later returned home with his mother, at which point he was arrested and taken into custody.

Ware made two statements to the police in which he admitted his role in the incident; the first was an oral statement to Officer Moore and the second was a written statement secured by Officer Dale Collins. In each statement, Ware admitted that he shot Williams, that he and Card dragged the victims out of Graves's car, and that they drove away in the car. At trial, Ware moved to suppress the written statement, arguing that it was involuntary because he could not read or understand the waiver of rights form. After holding a hearing, the trial court denied the motion. Ware never attempted to suppress his oral statement in the trial proceedings.

After Ware's motion for a directed verdict was denied, the jury convicted him of first-degree murder, felony murder, assault with intent to murder, and possession of a firearm during the commission of a felony. He was sentenced to life imprisonment without parole.

Instead of filing a direct appeal, Ware filed a motion for a new trial. The trial court granted the motion, citing

ineffective assistance of trial counsel, but the Michigan Court of Appeals reversed and reinstated Ware's convictions. The Michigan Supreme Court declined to review that decision.

Ware then filed a petition for a writ of habeas corpus in the district court. In a comprehensive opinion, the district court addressed each of Ware's claims but ultimately concluded that they lacked merit. Accordingly, the district court denied the petition, but granted a certificate of appealability with respect to the following issues:

[1]  Where trial counsel failed to offer evidence concerning the circumstances of the arrest on the issue of voluntariness, failed to challenge the admissibility of the oral statement, and failed to challenge the statements as the fruit of a Fourth Amendment violation, Petitioner was denied his Sixth Amendment right to the effective assistance of counsel.

[2]  Petitioner was also denied effective assistance of counsel in the following ways:

   A.  Trial counsel failed to request that Officer Collins' comment be stricken as non-responsive.

   B.  Trial counsel failed to ask for an instruction on self defense.

   C.  Trial counsel failed to object to prosecutorial misconduct and to the instructions.

[3]  Prosecutorial misconduct deprived Petitioner of due process in the following ways:

   A.  The failure to comply with a request for discovery within seven days denied Mr. Ware the right to present a defense and a fair trial.

B.  The prosecutor appealed to the jurors' fears and emotions in order to obtain a conviction.

C.  The prosecutor argued facts not in evidence.

[4]  The standard jury instruction on aiding and abetting denied Petitioner the right to a properly charged jury and to due process of law.

[5]  Petitioner's conviction for felony murder should be reversed because the evidence is insufficient to support the verdict.[1]

## II

We review de novo the district court's denial of a petition for a writ of habeas corpus. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("This court applies de novo review to the decision of the district court in a habeas corpus proceeding.") (citing *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000)). The Antiterrorism and Effective Death Penalty Act provides, in pertinent part, as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves "an unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A writ of habeas corpus may not be issued simply because the state court issued a decision that erroneously or incorrectly applies clearly established law; rather, the state court's application of law must have been objectively unreasonable. *Id.* at 410-11.

Our thorough review of the facts and arguments in this case leads us to the firm conclusion that Ware's petition was properly denied. Because we are in accord with the district court's persuasive and thorough reasoning with respect to each of the claims at issue in this appeal, we adopt that reasoning and find it unnecessary to offer any further analysis. Therefore, the district court's judgment is AFFIRMED.

---

[1]This statement of the issues was quoted by the district court from Ware's request for a certificate of appealability.